CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
March 04, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **BISHOP LELAND LAZARUS,** | ) |
| Plaintiff, | ) Case No. 7:25CV00312 |
| v. | ) **OPINION AND ORDER** |
| **WARDEN D.W. ZOOK, et al.,** | ) JUDGE JAMES P. JONES |
| Defendants. | ) |

*Bishop Leland Lazarus, Pro Se Plaintiff; Cristina E. Agee, Assistant Attorney General*, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE & PUBLIC SAFETY DIVISION, *Richmond, Virginia, for Defendants Zook, Wingfield, Martin, Kinley, Cabell, and Tucker.*

The plaintiff, a Virginia inmate, filed this action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), alleging that the defendants violated his rights by refusing to provide a Sunday Pentecostal worship service. Lazarus seeks injunctive and monetary relief. Before me are the defendants' Motion to Dismiss and Lazarus's Motion for a Temporary Restraining Order and Preliminary Injunction. Upon careful review, the motions will be denied.

I. BACKGROUND.

Lazarus's pro se pleading alleges that, on September 17, 2024, defendant Layne denied his request for a Pentecostal worship service to be held on Sundays. The next day, Lazarus filed a written complaint arguing that the denial of Sunday

services violated his rights under the Free Exercise Clause and RLUIPA, especially as other religious groups were permitted to worship on their respective observation days. In response, defendant Wingfield stated that "[t]he Pentecostal services would begin on 10-8-24, from 1:30–3:00 p.m." Compl. Ex. A, Dkt. No. 1-3. Because October 8, 2024, was a Tuesday, Lazarus deduced that Pentecostal services would not be held on Sundays. Lazarus followed up with a regular grievance on the issue. Defendant Kinley initially denied the grievance because Lazarus had not identified how he was personally affected.

On appeal, the Regional Ombudsman overturned the intake decision and advised Lazarus that the original documentation was forwarded to the grievance staff for logging or investigation. On review, however, the grievance was determined to be unfounded. The Level I response by defendant Zook provided as follows:

> Further investigation reveals after speaking with Chaplain S. Layne and F. Martin, Institutional Programs Manager, you have requested this day as a personal preference. Policy indicates that the Chaplain or designee will provide the time and space for religious activity and program scheduling is determined with staffing in mind. You may however participate in informal religious discussions in areas such as the dayroom and recreation yard if they do not interfere with security operations.
>
> Your grievance is governed by Operating Procedure 841.3, Inmate and CCAP Probationer/Parolee Religious Programs. Operating Procedure 841.3 states, "The Chaplain or designee will determine the frequency i.e., weekly, bi-weekly, monthly of each religious activity based on the total number of religious activities at the facility, available space and time, security needs, and staff supervision. Once the Chaplain or designated staff receive the minimum number of two Facility Requests

> for the same religious activity, the Chaplain or designee will provide time and space for the religious activity, at the same frequency as all other religious activities, to meet."

Compl. Ex. E, Dkt. No. 1-3 (emphasis omitted) Lazarus then appealed the response, emphasizing his need to worship on Sundays and citing related Bible verses. At Level II, defendant Tucker, on behalf of defendant Cabell, upheld the Level I decision and indicated that Lazarus had exhausted his administrative remedies. Based on the foregoing, Lazarus claims that the defendants have violated his rights to religious freedom under RLUIPA and the Constitution.

Lazarus now seeks injunctive and monetary remedies. In conjunction with the Complaint, he has filed a Motion for a Temporary Restraining Order and Preliminary Injunction. Dkt. No. 4. Lazarus argues that he is threatened with irreparable harm and that the relief sought will serve the public interest. He asks the court to enter an interlocutory order requiring that he receive weekly Sunday Pentecostal services and be protected from any retaliation by the defendants.

Following service of process, defendants Zook, Wingfield, Martin, Kinley, Cabell, and Tucker filed the Motion to Dismiss at issue. Defendant Layne has not answered the Complaint.[1] Lazarus filed a response to the motion, and the matter is ripe for my review.

---

[1] In response to the defendants' Motion to Dismiss, Lazarus "reserves the right to pursue claims against Layne separately." Pl.'s Resp. 2, Dkt. No. 22.

## II. DISCUSSION.

### A. Standard of Review.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests only the sufficiency of a complaint." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021) (internal quotation marks omitted). In considering a Rule 12(b)(6) motion, "[t]he district court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). A complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim includes factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]ourts are obligated to liberally construe[] pro se complaints, however inartfully pleaded." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017) (internal quotation marks and citation omitted).

### B. Constitutional Claims Under 42 U.S.C. § 1983.

Lazarus brings this cause of action under 42 U.S.C. § 1983, which imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983, "a plaintiff must allege the violation of a right secured

by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Adkins*, 487 U.S. 42, 48 (1988). Here, Lazarus asserts that the defendants violated his rights under the First and Fourteenth Amendments.[2] I will address each in turn.

### 1. Free Exercise Claim.

Under the Free Exercise Clause of the First Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. As the Fourth Circuit has recently explained, "[t]o state a free exercise claim, a plaintiff must allege '(1) that he holds a sincere religious belief and (2) that his religious practice has been substantially burdened by the prison policy or practice.'" *Hammock v. Watts*, 146 F.4th 349, 365 (4th Cir. 2025) (quoting *Firewalker-Fields v. Lee*, 58 F.4th 104, 114 (4th Cir. 2023)). A substantial burden is defined as:

> [O]ne that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs" . . . or one that forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand."

---

[2] Although Lazarus initially claimed that his Fifth Amendment rights were also violated based on the defendants' conduct, it appears that he has abandoned that claim in his Response to the defendants' Motion to Dismiss. Therefore, I will not address the adequacy of such claim.

-5-

*Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Rev. Bd. Of Ind. Emp. Sec. Div.*, 450 U.S. 707 (1981); *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)). Once the plaintiff makes this "threshold" showing, the burden shifts to the defendants to "offer[] penological interests that justify its infringement on free exercise rights . . . ." *Hammock*, 146 F.4th at 365 (citations omitted). Then, "[i]f the prison adequately alleges a penological interest, a plaintiff can still prevail if the policy is not reasonably related to that interest." *Id.* It is not until that point in the analysis that the factors outlined in *Turner v. Safley*, 482 U.S. 78, 89–90 (1987) are examined.[3] *Hammock*, 146 F.4th at 365.

The defendants do not focus their argument on contesting that Lazarus holds a sincere religious belief. Instead, the defendants argue that Lazarus has not sufficiently alleged that his inability to participate in formal religious services on Sundays substantially burdened the exercise of his religion, pointing out that

---

[3] The *Turner* test asks:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

*Wall v. Wade*, 741 F.3d 492, 499 (4th Cir. 2014) (citing *Lovelace*, 472 F.3d at 200).

-6-

Pentecostal services would begin on October 8, 2024, from 1:30–3:00 p.m. and that Lazarus could utilize the day room and recreation yard for daily informal religious practices. However, despite the availability to worship on a Tuesday, or informally any day, Lazarus claimed that "Sunday commemorated the Day of Pentecost when the Holy Spirit descented [sic] and birth the Lord's spiritual church (Acts 2)," and that "Sunday is a biblical holy day . . . where Pentecostal Christians gather for prayer and worship (Acts 20:7; 1 Corinthians 16:20)." Compl. 3, Dkt. No. 1. In his Response to the defendants' Motion to Dismiss, Lazarus emphasized that the denial of Sunday services specifically has "[p]revented communal worship central to Pentecostal doctrine," among other things. Resp. 2, Dkt. No. 22.

    Lazarus has satisfied the second prong where he has adequately pled that the inability to gather to worship communally on Sundays substantially burdened his religious practice. *See Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) ("A practice or policy places a substantial burden on a person's religious exercise when it 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'") (quoting *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981)); *see also Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019) (determining that a Wiccan inmate demonstrated a substantial burden when he was denied group worship on a specific day, considering that Wiccans worship communally).

Because Lazarus has made this threshold showing, it is the defendants' turn to show penological interests that justify the infringement on Lazarus's free exercise rights. However, the defendants have skipped that step in the analysis and jumped to the plaintiff's "burden of disproving the validity of the challenged regulation or action," under the *Turner* test. Mem. Supp. Mot. Dismiss 10, Dkt. No. 20 (citing *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015)). The Fourth Circuit has made clear that "[t]he prison bears the burden of offering the interests that support its policy . . . which it must present . . . to the district court in the first instance." *Hammock*, 147 F.4th at 365 (internal quotation marks and citations omitted). In prematurely placing the burden on the plaintiff to question its validity, the defendants contend that the policy is, in fact, "rationally connected to the interest of controlling available space and time, security needs, and staff supervision," relying on Exhibit E to the Complaint.[4] Mem. Supp. Mot. Dismiss 10, Dkt. No. 20. However, at the motion to dismiss phase, it is improper to consider the contents of Exhibit E as true, where Lazarus did not incorporate the exhibit for its truthfulness. *See Hammock,* 147 F.4th at 366–67 (finding it improper at the motion to dismiss stage to consider a document that a plaintiff incorporated into his complaint for the purpose of showing that the defendants denied his request and not for showing the

---

[4] Although the defendants cite Exhibit F after quoting the policy, it appears that they intended to cite Exhibit E where Exhibit F does not include the policy's language.

"truthfulness" of the defendants' justification for the denial). Exhibit E is the Level I Response to Lazarus's grievance, which, in part, includes the language of the prison's religious program policy. Lazarus included this exhibit to show that his request for Sunday Pentecostal worship services was denied — not to demonstrate any truthfulness in the defendants' reasoning for denying his request.

Even if I could consider Exhibit E to evaluate the contents of the policy, the defendants have not described how the interests of "controlling available space and time, security needs, and staff supervision as expressed in the language [of the policy]" support the burden on Lazarus's religious expression. Mem. Supp. Mot. Dismiss 10, Dkt. No. 20. Instead of arguing that "Plaintiff has not alleged what impact having a Sunday service would have on the security staff, inmates, and the allocation o[f] prison resources," *id.*, it was the defendants' burden to offer explanations for denying Pentecostal services on Sundays before shifting the burden to Lazarus. As Lazarus points out in his Response, "other groups received Sunday services under the same policy," Pl.'s Resp. 3, Dkt. No. 22, and the defendants have not stated why Pentecostal worship services must be held on a different day. Indeed, "it is not the courts' role to simply invent possible objectives that Defendants have not even claimed were the basis for their policy." *Hammock*, 146 F.4th at 366 (quoting *Wilcox v. Brown*, 877 F.3d 161, 169 (4th Cir. 2017)). Therefore, I cannot move on to undertake an analysis under *Turner* to determine if the defendants'

actions were unconstitutional. *See id.* (determining that it is "premature" to assess whether the defendants' actions were unconstitutional under *Turner* when the penological interest offered by the defendants was insufficient). Such a determination may be more appropriate on a motion for summary judgment where the defendants can present the policy and any justifications for their actions in accordance therewith.[5]

2.  Fourteenth Amendment Equal Protection Claim.

Pursuant to the Equal Protection Clause of the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. As the Fourth Circuit has explained:

> To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

*Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Considering that review of prison policies must be "tempered by the recognition that [l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights,"

---

[5] In Lazarus's Response to the defendants' Motion to Dismiss, he requests relief under Federal Rule of Civil Procedure 56(d) and to engage in limited discovery if the court converts the Motion to one for summary judgment. I have considered the defendants' motion under Federal Rule of Civil Procedure 12(b)(6) and have not converted it to a summary judgment motion. Therefore, the parties may hereafter cooperatively engage in discovery for purposes of trial or the filing of a separate motion for summary judgment.

a "prison regulation [that] impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests and not an exaggerated response to a particular concern." *Id.* at 654–55 (internal quotation marks and citation omitted).

Here, Lazarus has adequately claimed that he was treated differently from others who are similarly situated. He has specifically stated that "Seventh-Day Adventists and the Sunni Muslims . . . are afforded weekly holy day observances," while Pentecostals, "who have similar enrollment numbers as those groups," are not. Compl. 4, 5, Dkt. No. 1. While the defendants argue that Lazarus has not shown how these groups are similarly situated, it is clear that a Pentecostal prisoner would be similarly situated to other religious prisoners. *See Burke v. Clarke*, 842 F. App'x 828, 838 (4th Cir. 2021) (unpublished) (determining that a Rastafarian prisoner "is similarly situated to all other religious prisoners in [Virginia Department of Corrections (VDOC)] facilities, as they are all subject to the same VDOC policies regarding such religious practice.").

Lazarus further asserts that the unequal treatment was intentional[6] by relying on the VDOC's observance of Eid al-Fitr marking the end of Ramadan for Sunni

---

[6] I note that Lazarus does not specifically label the conduct at issue as "intentional" until his Response to the defendants' Motion to Dismiss. Pl.'s Resp. 3, Dkt. No. 22. However, under my obligation to hold pro se pleadings to "less stringent standards," I will liberally construe his filings together. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks and citation omitted).

Muslims and Roman Catholic services for Good Friday and Easter. Courts have determined that "[i]n most cases, a plaintiff lacks direct evidence of intentional discrimination, and he therefore will try to rely on evidence that two groups received different treatment, which can support an inference that the decisionmaker purposefully engaged in discrimination." *Lee v. Boyd*, 799 F.Supp.3d 507, 513 (W.D. Va. 2025) (quoting *Johnson v. Johnson*, 385 F.3d 503, 531 (5th Cir. 2004). Based on the circumstantial comparator evidence incorporated into his Complaint, Lazarus has met his burden at this stage of the proceedings.

The defendants do not take the next step in the analysis and argue that the disparity in treatment is reasonably related to legitimate penological interests. In any event, as I previously stated, the prison's policy cannot be analyzed for its truth at this stage in the proceedings, and the defendants have not offered a penological interest that supports the burden on Lazarus's religious expression.

### C. RLUIPA Claims.

Under RLUIPA,

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person —
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "Congress has expressly mandated that RLUIPA be construed 'in favor of a broad protection of religious exercise.'" *Greenhill v. Clarke*, 944 F.3d 243, 250 (4th Cir. 2019) (quoting § 2000cc-3(g)). Although RLUIPA "incorporates and exceeds the Constitution's basic protections of religious exercise" by "prescribing strict scrutiny" as opposed to reasonableness, it is similar to a Free Exercise claim in that a plaintiff must demonstrate that the defendants' policies impose a substantial burden on his religious exercise. *Lovelace*, 472 F.3d at 186, 198. The term "substantial burden" has the same meaning in the RLUIPA context as it does in the First Amendment context. *Greenhill*, 944 F.3d at 250. Under RLUIPA, "once the inmate makes the requisite initial showing, the burden shifts to the government to show that the prison policy is the least restrictive means of furthering a compelling governmental interest." *Id.*

The defendants combine their RLUIPA and Free Exercise arguments in their present motion. A Free Exercise claim under the First Amendment "affords less protection to inmates' free exercise rights than does RLUIPA." *Lovelace*, 472 F.3d at 199–200. Therefore, because I have already determined that Lazarus's Free Exercise claim survives, so too must his RLUIPA claim.

According to the defendants, Lazarus has failed to allege that his inability to participate in formal religious services on Sundays substantially burdened his exercise of religion. At the pleading stage, Lazarus has made this requisite initial

showing, as explained above. Thus, the burden shifts to the defendants to show that the prison policy is the least restrictive means of furthering a compelling governmental interest. The defendants have not carried their burden given that their motion is devoid of any argument that the policy is the least restrictive means of furthering a compelling government interest. Instead, they have improperly placed the burden on Lazarus to first disprove the policy's validity and argue that he has not "pled any obvious, easy alternatives to the regulation." Mem. Supp. Mot. Dismiss 10, Dkt. No. 20. Although the defendants state that the policy is rationally connected to the interest of controlling available space and time, security needs, and staff supervision, this argument requires analysis of evidence extrinsic to the Complaint and thus is more appropriate for the summary judgment or trial stage of the case. *Am. Chripractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) ("[A]s a general rule, extrinsic evidence should not be considered at the 12(b)(6) stage . . . .").

## D. Relief Sought.

The defendants first argue that Lazarus is not entitled to monetary damages under RLUIPA. However, in his Response to the Motion to Dismiss, Lazarus clarifies that, under RLUIPA, he seeks injunctive relief only. *See Wall v. Wade*, 741 F.3d 492, 496 n.5 (4th Cir. 2014) (noting that damages are unavailable under RLUIPA and a "plaintiff's only potential remedies under RLUIPA are equitable.").

Next, they argue that Lazarus is not entitled to monetary damages against the defendants in their official capacities under § 1983. Lazarus concedes that money damages are barred regarding his claims against the defendants in their official capacities. Indeed, it is well established that a plaintiff cannot recover monetary damages under § 1983 from state officers sued in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").

The defendants further argue that Lazarus is not entitled to injunctive relief against the defendants in their individual capacities. In his Response to the Motion to Dismiss, Lazarus clarifies that under his §1983 claims, only damages are sought for claims against the defendants in their individual capacities. *See Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991) (determining that officials may be sued for money damages "in their individual capacities" under § 1983) (emphasis omitted).

Therefore, under RLUIPA, Lazarus's claims for injunctive relief survive, and under § 1983, Lazarus's claims for monetary damages against the defendants in their individual capacities survive.

### E. Qualified Immunity.

The defendants insist that Lazarus has failed to state a claim for personal liability and that they are entitled to immunity given that the allegations against them

revolve around their participation in the inmate grievance process. I disagree. As the Fourth Circuit has explained, "[d]efendants have the burden of demonstrating qualified immunity at the motion to dismiss stage, and their entitlement to it must appear on the face of the complaint." *Hammock*, 146 F.4th at 367 (citations omitted). "The pertinent question is whether 'the unconstitutionality of the officers' conduct was clearly established.'" *Id.* at 364 (quoting *Pearson v. Callahan*, 555 U.S. 223, 227 (2009)). However, because more evidence is needed to analyze Lazarus's constitutional claims, the defendants cannot show that they are entitled to qualified immunity at this time. *See id.* at 368 ("[A]s Defendants have not presented *any* penological interest . . . and [the plaintiff's] right was clearly established, we hold that Defendants have not shown that they are entitled to qualified immunity at this motion to dismiss stage 'before any of the evidence is in.'") (quoting *Thorpe v. Clarke*, 37 F.4th 926, 930 (4th Cir. 2022); *Wall*, 741 F.3d at 502 (determining that defendants were not entitled to qualified immunity when it was established that decisions related to the application of a religious services policy were unconstitutional); *Madison v. Virginia*, 474 F.3d 118, 131 (4th Cir. 2006) ("[C]laims for equitable relief are not barred by the Eleventh Amendment.").

F. Motion for a Temporary Restraining Order and Preliminary Injunction.

Finally, along with the Complaint, Lazarus filed a Motion for a Temporary Restraining Order and Preliminary Injunction. He argues that he is threatened with

irreparable harm based on the "continuing deprivation" of his constitutional rights. Mot. Prelim. Inj. 2, Dkt. No. 4. He further argues that the relief sought "will serve the public interest because it is always in the public interest for prison officials to obey the law, especially the Constitution." *Id.*

A party seeking a preliminary injunction must state facts clearly showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

Lazarus has not satisfied the four factors set forth by *Winter*. Rather, he only asserts that he is threatened with irreparable harm and that relief will serve the public interest, failing to address the other two factors. In any event, I disagree with Lazarus's argument that he is likely to suffer irreparable harm in the absence of court intervention at this time, particularly where the status quo is maintained by the current religious services arrangement, and more evidence is needed to determine whether the defendants have violated the Constitution. *See Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (describing a preliminary injunction as an

"extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit."). Therefore, Lazarus's motion will be denied.[7]

### III. CONCLUSION.

Based on the foregoing, it is **ORDERED** that the defendants' Motion to Dismiss, Dkt. No. 19, and Lazarus's Motion for a Temporary Restraining Order and Preliminary Injunction, Dkt. No. 4, are DENIED. The defendants may file a motion for summary judgment no later than 60 days from the date of entry of this Opinion and Order, and if not so filed, the case will be set for trial.

ENTER: March 4, 2026

/s/ JAMES P. JONES
Senior United States District Judge

---

[7] Lazarus also requests a temporary restraining order. Temporary restraining orders are issued rarely, when the movant proves that he will suffer injury if relief is not granted before the adverse party could be notified and have opportunity to respond. Fed. R. Civ. P. 65(b). This order would only last until a hearing on a preliminary injunction could be arranged. Because Lazarus is not entitled to a preliminary injunction, there is no basis upon which to grant him a temporary restraining order.